AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Western District of Arkansas
Fort Smith Division

<table>
<tr><td>In the Matter of the Search of</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>One Silver Apple MacBook Pro</td><td>)</td><td></td></tr>
<tr><td>model A1398, serial number C02R2BD5G8WN</td><td>)</td><td>2:21cm2</td></tr>
<tr><td>One Apple iPhone in a clear case with a</td><td>)</td><td>Case No. _____</td></tr>
<tr><td>"BLACK RIFLE 20" sticker on back</td><td>)</td><td></td></tr>
<tr><td>One Apple iPhone model A1660</td><td>)</td><td></td></tr>
<tr><td>One WD My Passport external hard drive</td><td>)</td><td></td></tr>
<tr><td>serial number WX71A68E9V8S</td><td>)</td><td></td></tr>
<tr><td>One Apple iPhone model A1161</td><td>)</td><td></td></tr>
</table>

**FILED**
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Jan 5, 2021

OFFICE OF THE CLERK

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*: **See Attachment A.**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: **See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

 X  evidence of a crime;

 X  contraband, fruits of crime, or other items illegally possessed;

 X  property designed for use, intended for use, or used in committing a crime;

 ☐  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 18 U.S.C. §§ 2251 (a) and (e), production of child pornography and 18 U.S.C. §§ 2252(A)(a)(5)(B) and (b)(2), the possession of child pornography.

The application is based on these facts:  **See Affidavit of FBI Special Agent Robert Allen**

 **X** Continued on the attached sheet.

 ☐  Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Robert Allen, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___1/5/2021___

_____
*Judge's signature*

City and state:  Fort Smith, Arkansas

Mark E. Ford, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Robert Allen, your Affiant, am a Special Agent for the Federal Bureau of Investigation (FBI), being duly sworn, state the following is true and correct based upon my personal knowledge, investigation, and belief:

## INTRODUCTION

1.      Affiant is a Special Agent currently assigned to the Fort Smith Resident Agency of the Little Rock Division of the FBI.  I have been employed as a Special Agent with the FBI for over thirteen years.  During my employment with the FBI, I have received training concerning and have participated in the investigation of federal criminal offenses enumerated in Title 18, U.S.C. § 2423(a), specifically, criminal statutes involving the sexual exploitation of minors.  Prior to my employment with the FBI, I was employed as a Certified Police Officer by the Van Buren, Arkansas, Police Department for ten years.  During my employment as a Van Buren Police Officer, I received training and was involved in investigating criminal offenses.  As part of my duties, I am assigned to the River Valley Child Exploitation Task Force operating out of the FBI Resident Agency (RA) in Fort Smith, Arkansas.  I investigate criminal violations relating to crimes against persons utilizing the Internet, the sexual exploitation and trafficking of minor children through the Internet, child exploitation and child pornography including violations pertaining to the illegal production, distribution, online enticement, transportation, receipt and possession of child pornography.  I have received training in the area of Internet crimes against persons, sexual exploitation and trafficking of minor children through the Internet, child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of venues individuals utilize to advertise and exploit minor children for sexual encounters via the Internet as well as child pornography in all forms of media including computer media.  I have also participated in the execution of numerous search warrants and arrest warrants, several of which involved

1

Internet crimes against persons, sex trafficking of minors, child exploitation and/or child pornography offenses. This Affidavit is being submitted based on information from my own investigative efforts as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2. This Affidavit is being submitted in support of an application for a search warrant for the electronic devices (subject devices) that Jeffrey Callen Gonzagowski, Jr. (GONZAGOWSKI) had in his possession when he was arrested December 10, 2020, in Van Buren, Arkansas, in the Western District of Arkansas, Fort Smith Division. GONZAGOWSKI's arrest was authorized by this Court pursuant to a criminal complaint filed in case number 2:20-mj-2016-001, captioned United States of America v. Jeffrey Callen Gonzagowski, Jr. The subject devices are described in Attachment A. The subject devices are currently stored at the FBI office in Fort Smith, Arkansas, in the Western District of Arkansas, Fort Smith Division.

3. At the time GONZAGOWSKI was arrested, he was observed using a laptop computer and cellphone. Additionally, GONZAGOWSKI had other cell phones near his person and an external hard drive was attached to the laptop that he was using. Specifically, GONZAGOWSKI was sitting at the counter of his business, with a silver Apple laptop directly in front of him, open and on, with an external hard drive attached. Additionally, GONZAGOWSKI's iPhone with a clear case was on a charger directly to the right of the laptop, and two additional iPhones were located directly to the back of the laptop (as the laptop screen is up). All of the devices were found within arm's reach of GONZAGOWSKI. While placing GONZAGOWSKI under arrest, law enforcement officers observed that GONZAGOWSKI's pants were unzipped and loose. GONZAGOWSKI later admitted he was viewing child pornography when law enforcement officers entered his business located at 515 Main Street, Van Buren, Arkansas.

4.      Your Affiant is aware from investigative experience and training that some smart phones and computer devices require to be either turned on and accessed, or taken apart, in order to locate a device serial number. This is the case with newer Apple iPhone and computer products. Several of the subject devices seized from GONZAGOWSKI do not have a visible serial or product number on the exterior of the device and further manipulation to the device to look for an internal serial number could cause damage. Therefore, this affidavit does not set forth the serial numbers for all of the subject devices to be searched.

5.      The subject devices seized are described as follows: One silver colored, Apple laptop "MacBook Pro" computer, model #A1398, serial number C02R2BD5G8WN, specifically pictured in Attachment A, image #1 and image #2. One, Apple iPhone, in a clear case with "BLACK RIFLE'20" sticker on back, serial number unavailable by visual inspection, specifically pictured in Attachment A, image #3 and image #4. One, Apple iPhone model A1660, serial number unavailable by visual inspection, specifically pictured in Attachment A, image #5 and image #6. One "WD My Passport" brand external hard drive, serial number WX71A68E9V8S, specifically pictured in Attachment A, image #7 and image #8. One Apple iPhone model A1661, serial number unavailable by visual inspection, specifically pictured in Attachment A, image #9 and image #10.

6.      Affiant has probable cause to believe that based upon the investigation conducted to date and set forth in more detail below, there is evidence on the subject devices of violations of 18 U.S.C. §§2252(A)(a)(5)(B) and (b)(2), knowingly possessing material that contains child pornography and attempting to do so, and knowingly accessing the internet with the intent to view material that contains child pornography and attempting to do so; and violations of 18 U.S.C. §§ 2251(a) and (e), the use of a minor with intent that such minor engage in any sexually explicit

conduct for the purpose of producing any visual depiction of such conduct and the image is produced with materials that have been mailed, shipped and transported in or affecting interstate or foreign commerce. This Affidavit does not set forth all of my knowledge about this matter.

7.      Based on the investigation to date, I have probable cause to believe that evidence will be found in the subject devices that GONZAGOWSKI violated 18 U.S.C. §§ 2252(A)(a)(5)(B) and (b)(2), in the Western District of Arkansas, Fort Smith Division, on or about December 10, 2020, by possessing and accessing with intent to view images of minors engaged in sexually explicit conduct and that the images were produced with materials that had been mailed, shipped and transported in interstate and foreign commerce. Based on the investigation to date, I have probable cause to believe that evidence will be found in the subject devices that GONZAGOWSKI violated 18 U.S.C. §§ 2251 (a) and (e) by producing an image of JANE DOE, a minor, engaged in sexually explicit conduct with materials that have been mailed, shipped and transported in or affecting interstate or foreign commerce sometime between 2014 and 2019 in the in the Western District of Arkansas, and that evidence of this statutory violation will be found on the subject devices requested to be searched.

8.      Based on the investigation to date, Affiant has probable cause to believe that evidence will be found in the subject devices that, on or about December 10, 2020, in the Western District of Arkansas, Fort Smith Division, GONZAGOWSKI possessed a laptop computer and cellular devices that were connected to the Internet, and therefore, enabled him to access and view images of minors engaged in sexually explicit conduct, and to retain and therefore possess these contraband images and keep the contraband images on devices that were easily accessible to him so that he could view the images, and that evidence of this will be found on the subject devices requested to be searched.

## STATUTORY AUTHORITY

9.      Title 18, U.S.C. §§ 2251 (a) and (e) make it a federal crime for any person to employ, use, persuade, induce, entice, or coerce any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any such means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, or attempts or conspires to do so.

10.     Title 18, U.S.C. §§ U.S.C. § 2252(A)(a)(5)(B) and (b)(2), make it a federal crime to knowingly possess, or knowingly access with the intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, of shipped, or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, or attempts or conspires to do so.

5

11.     "Child Pornography" is defined in  Title 18, U.S.C. § 2256(8) as any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

12.     Title 18, U.S.C. § 2256(2)(A) defines "sexually explicit conduct" to mean actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same sex or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person.  Title 18, U.S.C. § 2256(5) defines "visual depiction" to include undeveloped film and videotape, data stored on a computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

**TRAINING AND EXPERIENCE IN THE INVESTIGATION OF CHILD PORNOGRAPHY AND SEXUAL EXPLOITATION OF CHILDREN**

13.     In Affiant's training and experience, persons involved with child pornography or other forms of online sexual exploitation of children generally prefer to store depictions of child pornography or other similar evidence of their crimes on computers, removable storage devices, email accounts or other hardware or media that can store visual depictions in digital form.  The capacity of external hard drives, flash drives, and other storage media has increased dramatically in recent years as the cost of storage media has gone down.  As a result, persons involved with child pornography and other online child predators may electronically store contraband and other electronic evidence for years at little or no cost, including remotely on servers provided by online

"cloud" storage services, without the need to delete files to make room for other files. In Affiant's training and experience, Affiant knows that information and photographs are readily transferrable from computers to cellular telephones, and can be easily transported to different locations, or sent electronically to online or "cloud" storage services, such as those offered by Google and Apple.

14.     Affiant is aware from experience and law enforcement training that individuals who seek to view and keep images of child pornography, often keep these images for a long period of time. In Affiant's experience and training, Affiant has found that those who are interested in child pornography retain child pornography for many years because child pornography is illegal and difficult to obtain and produce. Therefore, Affiant knows that an individual who produces and/or possesses child pornography will go to great measures to maintain and conceal child pornography. Additionally, Affiant is aware through training and experience, that child pornography producers utilize child pornography materials to relive their sexual experiences with minors, especially if they have lost access to a minor that was being sexually abused. This makes child pornography that a person has personally produced more valuable to the child pornography producer/collector, and the child pornography producer will go to even greater lengths to maintain child pornography images/videos, as the images/videos have personal connections to and value to the producer.

15.     Based on Affiant's training and experience, and the experience of other agents, your Affiant knows that individuals involved in child pornography almost always retain copies of the sexually explicit material they receive. Among the reasons copies are maintained is because child pornography is illegal to openly purchase, and the most common method of acquiring it is by trading with other people with similar interests. It is also known that due to the inherent illegality of these sexually explicit materials, they are most often kept in a secure place, usually a residence, to avoid detection by law enforcement. Your Affiant has also learned from his training and

7

experience, and from talking with other seasoned law enforcement officers, that possession of child pornography is continuing in nature, and oftentimes collectors of child pornography do not quickly dispose of images they have received.   To the contrary, those involved in child pornography and other forms of online sexual exploitation of children commonly retain images and other relevant digital evidence and store it in secure locations for long periods of time.  These locations often include the offenders' home computers, smart phones and other external devices, email accounts, and remote "cloud" storage services, like those offered by Google, Apple, and other companies.

## PROBABLE CAUSE TO SEARCH SUBJECT DEVICES

16.     After arresting GONZAGOWSKI at his business in Van Buren, Arkansas, on December 10, 2020, and giving him a *Miranda* advisement, GONZAGOWSKI voluntarily made an audio and video-recorded statement.  GONZAGOWSKI stated that he was watching child pornography when investigators entered his business.  GONZAGOWSKI admitted he viewed child pornography almost daily and has done so for many years.  GONZAGOWSKI admitted that his preferred child pornography to view is 10 to 13 year old females.  He stated he would find child pornography on the internet, view the child pornography, and delete it when he was done. GONZAGOWSKI claimed he did not save child pornography.  GONZAGOWSKI admitted that he used the laptop, and two of the cell phones that were seized at his arrest to access child pornography.  Affiant has probable cause to believe that the admission made by GONZAGOWSKI that he searched for child pornography on the internet, viewed it, then deleted it, is evidence of the

8

commission of Title 18, U.S.C. §§ U.S.C. § 2252(A)(a)(5)(B) and (b)(2), and that the subject devices will contain evidence of that statutory violation.

17.     GONZAGOWSKI made a statement in reference to Affiant's investigation of GONZAGOWSKI transporting a minor in interstate commerce from the Western District of Arkansas to Oklahoma with intent to engage in criminal sexual activity with a minor who has previously been identified to this Court as JANE DOE in case number 2:20-mj-2016-001.  During his recorded statement post-arrest on December 10, 2020, GONZAGOWSKI admitted to touching JANE DOE on her vagina for several years.  He explained when the sexual abuse on JANE DOE started and what happened, to include sexually abusing JANE DOE at multiple hotels in Hot Springs, Arkansas.  GONZAGOWSKI admitted he touched JANE DOE on her vagina on the trip to Oklahoma.  GONZAGOWSKI initially denied any penetration with his fingers when he touched JANE DOE, then later in the interview, he admitted that his fingers would go inside her vagina just a little bit.  GONZAGOWSKI denied ever penetrating JANE DOE's vagina with his penis. Later in the interview, GONZAGOWSKI stated that he would just rub his penis up against JANE DOE's vagina but would not penetrate her vagina.

18.     GONZAGOWSKI admitted during his post-arrest interview to taking a picture of JANE DOE's vagina with a cell phone, and provided details of what led up to him taking the picture of JANE DOE's vagina and how he took the picture.  GONZAGOWSKI claimed he deleted the picture of JANE DOE's vagina sometime later.  Affiant has probable cause to believe that the photo GONZAGOWSKI took of JANE DOE's vagina constitutes a violation of Title 18, U.S.C.

§§ 2251 (a) and (e) and that evidence of this statutory violation will be found on the subject devices.

19.     Based upon GONZAGOWSKI's statement after arrest that GONZAGOWSKI took a photograph of JANE DOE's vagina with a cell phone, Affiant has probable cause to believe that GONZAGOWSKI did in fact violate Title 18, U.S.C. §§ 2251 (a) and (e) when GONZAGOWSKI used his cellular phone to produce an image/or images of the vagina of JANE DOE, a minor, while engaged in sexually explicit conduct with intent that JANE DOE engage in sexually explicit conduct, for the purpose of producing any visual depiction of such conduct.  By using a cell phone to produce an image of JANE DOE engaged in sexually explicit conduct, Affiant knows that GONZAGOWSKI used a means or facility of interstate commerce to produce that image of JANE DOE engaged in sexually explicit conduct since, through Affiant's training and experience, Affiant knows that no cell phones are manufactured in the State of Arkansas.  Therefore, GONZAGOWSKI used materials to produce an image of JANE DOE engaged in sexually explicit conduct with materials that had been mailed, shipped, or transported in and affecting interstate and foreign commerce.

20.     Affiant has reviewed forensic interviews of JANE DOE that were conducted on September 4, 2020, and October 29, 2020, at the Cooper-Anthony Mercy Child Advocacy Center in Hot Springs, Arkansas.  The forensic interviews were conducted because JANE DOE had made a disclosure that GONZAGOWSKI had had sexual contact with her previously.  JANE DOE stated during both forensic interviews that she had been sexually abused for a period of years by GONZAGOWSKI.    According to JANE DOE, GONZAGOWSKI began touching her inappropriately during the period of time in JANE DOE's life when she participated in cheer competitions and her mother worked nights.  Affiant has learned that the period of time described

by JANE DOE when she participated in cheer competitions and her mother worked nights was prior to September 2014.

21.      JANE DOE described the abuse during the forensic interviews as GONZAGOWSKI touching her vagina with his fingers both on the outside and inside of her vagina.  JANE DOE reported the abuse eventually evolved into GONZAGOWSKI putting his penis into her private area (referring to her vagina).  She reported the abuse continued until she was around twelve or thirteen years old, at which time she no longer was around GONZAGOWSKI.  Based on JANE DOE's date of birth in 2006, the sexual abuse continued through at least 2018 or 2019.

22.      JANE DOE told the forensic interviewers that the sexual abuse escalated into sexual intercourse.  She stated that GONZAGOWSKI would insert his penis into her vagina. JANE DOE gave details of being sexually abused by GONZAGOWSKI when he traveled to Hot Springs to visit his biological daughter. GONZAGOWSKI would have sexual intercourse with JANE DOE in motels in Hot Springs.

23.      JANE DOE reported that she believed GONZAGOWSKI used his cell phone to take a photo while he was penetrating her vagina with his fingers.  JANE DOE stated she believed this occurred when she saw that the cell phone camera's flash was turned on.  According to JANE DOE, GONZAGOWSKI then put his cell phone away, continued touching her and then put his penis inside her vagina.  Therefore, Affiant has probable cause to believe that the image produced by  GONZAGOWSKI as he was about to or did penetrate JANE DOE with his finger is an image of JANE DOE engaged in sexually explicit conduct and that image will be found in the subject devices. Although JANE DOE could not state the exact date that she believed GONZAGOWSKI took a photo of himself attempting to touch or touching her genital area, she recalled it occurred

11

during one of the times that he raped her at a motel in Hot Springs, Arkansas, when she would have been eleven or twelve years old.

24.     Based upon Affiant's knowledge of JANE DOE's date of birth and her statement that she believed the image of her genitals was photographed by GONZAGOWSKI when she was eleven or twelve years old, Affiant believes GONZAGOWSKI produced an image of JANE DOE when she was a minor in or about 2016 through in or about 2019.  Through experience and training, Affiant has a reasonable belief that GONZAGOWSKI would retain an image he produced of JANE DOE engaged in sexually explicit conduct.  Therefore, Affiant has probable cause to believe that evidence of GONZAGOWSKI's violation of Title 18, U.S.C. §§2251(a) and (e) will be located on the subject devices.

25.     Affiant knows from personal experience and investigations involving electronic media that people upgrade cell phones every couple of years and that videos and images that are valuable to the cell phone owner are downloaded to the next, newer phone.  Additionally, Affiant has found during the execution of several search warrants that defendants will retain old cellular phones for many years.  Your Affiant has found from conversations and briefings with other investigators of child exploitation cases, that individuals retain an obsolete cell phone because it has child pornography on the cell phone, even though the individual uses a newer model cell phone for regular day-to-day phone services.  Affiant is aware that for those who obtain sexual gratification from child pornography, an image or video from contact between the producer and the minor victim is highly valuable to the producer.

26.     Based on the aforementioned and previous experience, Affiant would expect GONZAGOWSKI to have maintained on the subject devices one or more child pornography images GONZAGOWSKI produced of JANE DOE engaged in sexually explicit conduct.  In

addition to maintaining child pornography, those who produce and view child pornography will transfer child pornography images/videos to other forms of media to further conceal and or access the material again. Child pornography collectors will often transfer images to small concealable thumb drives which are easier to conceal at a residence and hide from family members and law enforcement. The transfer of child pornography to other media also makes it possible for child pornography collectors to view their collection from other devices such as computers and tablets. Therefore, Affiant has probable cause to believe that the subject devices will contain images of child pornography.

      27.     Based on Affiant's experience, Affiant knows that the execution of most warrants involving computerized information requires special agents to seize a portion or all of a smart phone and/or computer system's central processing unit (CPU), input/output peripheral devices, related software, documentation, and data security devices, including passwords, so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

      a.     Volume of evidence and time required for examination: Computer storage devices such as hard disks, diskettes, tapes and laser disks, can store the equivalent of thousands of pages of information. This sorting process can take up to several months to complete, depending on the volume of data stored. Therefore, in most cases, reviewing that information for items described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt solely via an on-site examination.

      b.     Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a variety of forensic tools. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications,

13

so it is difficult to know before a search which expert is qualified to analyze the system and its data.  In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to inadvertent or intentional destruction (both from external sources and from destructive code embedded in the system such as a "booby trap"), a controlled environment, in most instances, is essential to a complete analysis.

Therefore, authorization is sought to search, access, image, or otherwise copy any and all digital media described in Attachment B that were seized from Jeffrey GONZAGOWSKI on December 10, 2020.

28.    Based on the information contained in this Affidavit, Affiant respectfully requests a Search Warrant be authorized for the search of the subject devices seized from Jeffrey Gonzagowski on December 10, 2020, in Van Buren, Arkansas (more particularly described in Attachment A), to search for information and evidence as described in Attachment B, as there is probable cause to believe that those items contain evidence of violations of Title 18, U.S.C. §§ 2251 (a) and (e) and Title 18, U.S.C. §§ U.S.C. § 2252(A)(a)(5)(B) and (b)(2).



Robert F. Allen, Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this _5th_ day of January, 2021.

Honorable Mark E Ford
United Stated Magistrate Judge

14

**ATTACHMENT A**
**DESCRIPTION OF THE DEVICES TO BE SEARCHED**
**(SUBJECT DEVICES)**

The SUBJECT DEVICES are a laptop, three cell phones, and an external hard drive, currently located at the Fort Smith FBI office, in the Western District of Arkansas and are depicted in the ten color photographs shown below:



IMAGE #1  Top of SUBJECT DEVICE, Apple "Macbook Pro" laptop, Model #A1398, serial number C02R2BD5G8WN silver in color.



IMAGE #2  Bottom of SUBJECT DEVICE, Apple "Macbook Pro" laptop, Model #A1398, serial number C02R2BD5G8WN silver in color.



IMAGE #3 Front of SUBJECT DEVICE, iPhone (approximate size of 6 1/4 inches by 3 1/8 inches) in clear case.



IMAGE #4 Back of SUBJECT DEVICE, iPhone (approximate size of 6 1/4 inches by 3 1/8 inches) in clear case.



IMAGE #5 Front of SUBJECT DEVICE, smaller (approximate size of 5 3/8 inches by 2 5/8 inches), old iPhone Model A1660, with cracked screen.



IMAGE #6 Back of SUBJECT DEVICE, smaller, (approximate size of 5 3/8 inches by 2 5/8 inches), old, iPhone Model A1660, with cracked screen.



IMAGE # 7 Front of SUBJECT DEVICE, "WD My Passport" brand external hard drive, serial #WX71A68E9V8S.



IMAGE #8 Back of SUBJECT DEVICE, "WD My Passport" brand external hard drive, serial #WX71A68E9V8S.



IMAGE #9  Front of SUBJECT DEVICE, larger (approximate size of 6 1/8 inches by 3 inches), old, iPhone Model A1661, with cracked screen.



IMAGE #10  Back of SUBJECT DEVICE, larger (approximate size of 6 1/8 inches by 3 inches), old, iPhone Model A1661, with cracked screen.

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

1.      Any and all images of suspected child pornography and files containing images of suspected child pornography, any and all images believed to be an attempt to produce child pornography or images of minors, nude or otherwise, in any form wherever it may be stored or found including, but not limited to:

     i.      Originals, thumbnails, and copies of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

     ii.     Videos (aka: motion pictures, films, digital recordings), and other recordings or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

     iii.    Images self-produced of the defendant and minors, and attempts to take or produce such.

     iv.     Images of children, nude or otherwise, possessed, sent, received, or via message, email, or otherwise stored.

     v.      Internet history, search history, including CACHE memory related to Internet searches for child pornography or websites that could contain such.

     a.      Information or correspondence pertaining to the sexual exploitation of minors or solicitation of such for sexual activity, including any and all information such as e-mail, chat logs, text messages, etc. related to the sexual exploitation of children, including but not limited to:

     i.      Correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, text messages, establishing possession, identity of individuals (including Contact lists), access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

     ii.     Records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

     iii.    Any and all chat log, text messages, email, or any type of communication in any form that is related to the sexual exploitation of minors.

     a.      Including messages sent to individuals discussing the sexual assault or desire to sexually assault minors or discussion of online posts regarding images of child pornography.

21

b.      Records evidencing ownership of the items seized, including in and all lists of names, telephone numbers, addresses and contacts, and the content of voice mails and text messages and Internet based applications.

c.      Any and all security devices, to include encryption devices, needed to gain access to the phone.

d.      Any and all address lists, names, contact information of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, U.S.C. § 2256; and/or any information evidencing contact or correspondence with minors or adults in whatever form.

e.      In searching the data, the computer personnel may examine and copy all of the data contained in the SUBJECT DEVICES to view their precise contents and determine whether the data falls within the items to be seized.  In addition, the examining personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized.